# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| DON FORTE<br>12006 Pippin Road<br>Cincinnati, OH 45231 | : <br> : <br> : | Case No. 1:22-cv-314 <br><br> Judge |
| Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | |
| PETER CREMER NORTH AMERICA, LP<br>8117 Southside Avenue<br>Cincinnati, OH 45231 | : <br> : <br> : <br> : | **COMPLAINT WITH JURY**<br>**DEMAND ENDORSED HEREON** |
| Defendant. | : | |

## PARTIES

1. Plaintiff Donald Forte ("Plaintiff" or "Mr. Forte") resides in Hamilton County, Ohio.

2. Defendant Peter Cremer North America, LP ("PCNA") is a foreign limited partnership with its principal place of business located in Cincinnati, Ohio.

3. Defendant is an employer within the meaning of United States and Ohio law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, including the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Family Medical Leave Act ("FMLA") 29 U.S.C. §2601 *et seq.*

5. This Court has supplemental jurisdiction over the state law claims in this Complaint pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims derive from the same operative

facts and are so related to his federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). He filed that Charge less than 300 days after being notified of his termination. Plaintiff received a Notice of Right to Sue from the EEOC dated March, 4 2022 (attached as Ex. A), and this Complaint is filed within 90 days of receipt of the Notice.

7. Venue is proper in this division and district pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this division and district.

## FACTUAL ALLEGATIONS

8. Plaintiff Donald Forte is African American and was born in 1957. He was 63 years of age at the time of his termination from Defendant.

9. Defendant is an oleochemical manufacturer and supplier that produces foods, pharmaceuticals, cosmetics, paints, plastics, and other chemical materials.

10. Defendant hired Plaintiff on or about May 21, 2018 as a Production Supervisor.

11. Plaintiff was the only supervisor on the second shift and was the oldest employee in the department.

12. At all times relevant to this Complaint, Plaintiff was a qualified, loyal and dedicated employee.

13. Throughout his employment, Plaintiff was subjected to racially offensive language in the workplace, including frequent use of the word "ni***r."

14. Plaintiff engaged in legally protected activity by complaining to Senior VP of Operation William Harvey and HR Generalist Maggie Rindler about the use of racially offensive language in the workplace. However, management tolerated this language and Plaintiff's concerns were

dismissed. Mr. Harvey responded to Mr. Forte's complaint by telling him "I listen to Tupac too." He further responded that by explaining if the employees were not complaining then he was not concerned.

15. From May 2018 to June 2020, Plaintiff reported to Manager Raymond Godfrey who was 59 years old.

16. When Mr. Godfrey left Defendant's company, he informed Plaintiff that he was the only reason Plaintiff was still employed with Defendant. Mr. Godfrey had been given a negative performance evaluation before he quit. He told Plaintiff that he had raised concerns about staffing shortages which were unsafe, led to poor motivation among the workforce, and created product quality and housekeeping concerns.

17. In June 2020, Matthew Reed, who was Caucasian and substantially younger than Plaintiff, became Plaintiff's supervisor.

18. Thereafter, Reed began to target Plaintiff with unfounded disciplinary actions, including, but not limited to, disciplining Plaintiff for use of leave under the Families First Coronavirus Response Act ("FFCRA").

19. The FFCRA created two new emergency paid leave requirements in response to the COVID-19 global pandemic: the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA"). *See* 26 CFR Part 826.

20. On April 21, 2020, Plaintiff sent a text message to Human Resources Generalist Maggie Rindler to receive information on taking leave to care for his asthmatic grandson, a high-risk condition during the Coronavirus pandemic. Plaintiff's son is deceased and Plaintiff was and is acting *in loco parentis* as the primary care-giver for his grandson.

21. On or about April 26, 2020, in anticipation of emergencies relating to his grandson's asthma during the pandemic, Plaintiff submitted to Defendant a E-PSL-Emergency Paid Sick Leave form and a note from his grandson's doctor.

22. On June 25, 2020, Plaintiff had to take his grandson to the hospital and could not attend his shift. Plaintiff notified Reed via text message and appropriately covered the shift.

23. Under the supervision of Mr. Godfrey, Plaintiff notified Mr. Godfrey of his absence via text message and was not disciplined for it, nor directed to stop communicating absences by text message.

24. Despite putting Defendant on notice of his need for leave protected by the FFCRA, submitting the appropriate paperwork, and ensuring the shift was staffed in his absence, Plaintiff received a written warning for allegedly not following proper call off procedure.

25. Defendant's Human Resources Department and Talent Acquisition Team are responsible for safe and effective staffing of its operations and product safety oversight.

26. Despite several requests by Plaintiff and Mr. Harvey to fix the understaffing issue during the night shift, Defendant continued to disregard these concerns and failed to staff the shift appropriately.

27. In fact, Plaintiff learned from supervisor Warren Thomas that Mr. Reed had instructed Mr. Thomas, to not send staffing assistance to Plaintiff.

28. On July 16, 2020, Plaintiff took medication for an ear infection that caused his temperature to be elevated. Plaintiff was not experiencing any other symptoms.

29. Because the shift was already short-staffed and it was the second day of Defendant's launch of a new Warehouse Management System, Plaintiff reported to work and performed his job without incident.

30. Plaintiff continued to check his temperature throughout the shift and read multiple temperatures within normal range.

31. Despite Reed's expression of gratitude for Plaintiff's dedication to his work, Plaintiff was suspended for five days without pay for allegedly violating Coronavirus guidelines.

32. On the night/morning of September 4-5, 2020, Plaintiff was once again forced to supervise the night shift with a short staff.

33. Despite Plaintiff's request months before on June 6 for the replacement of a temporary contractor who was unable to perform his role of Flaking Operator, this employee was never replaced.

34. During the shift on September 4-5, another operator requested to leave early, which left Plaintiff with only 9 operators to perform a job that requires 12 or more employees.

35. Because the shift was understaffed, Plaintiff was forced to shut down an operation line.

36. During this shift Plaintiff, notified Mr. Reed of contamination detected in Belt 1 which was running pharmaceutical products.

37. Complying with industry standards, Plaintiff instructed Mr. Reed of his intention to turn in the physical samples to the Quality Assurance Team for proper testing and documentation. Instead, Mr. Reed instructed Plaintiff to destroy the samples, and Plaintiff complied.

38. Concerned with Mr. Reed's instruction to destroy the samples, on or about September 10, 2020, Plaintiff emailed members of Senior Management and the Human Resources department to notify them of the contaminated product.

39. On September 22, 2020, Defendant abruptly terminated Plaintiff's employment allegedly for mistakes made on the September 4/5 shift when night shift was again understaffed.

40. Plaintiff's termination occurred within 12 days of notifying management of the product contamination.

41. Upon information and belief, after Plaintiff was terminated, he was replaced by a substantially younger, Caucasian employee.

## COUNT I

### (Age Discrimination – O.R.C. § 4112)

42. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

43. Plaintiff is over the age of 40 and was fully qualified for his position at all relevant times.

44. Defendant unlawfully discriminated against Plaintiff because of his age in violation of Ohio law by terminating his employment because of his age, treating Plaintiff differently and less-favorably than similarly-situated younger employees, and replacing him with a younger employee.

45. Defendant's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

46. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages for which he is entitled to recovery.

## COUNT II

### (Age Discrimination – ADEA)

47. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

48. Plaintiff is over the age of 40 and was fully qualified for his position at all relevant times.

49. Defendant unlawfully discriminated against Plaintiff because of his age in violation

of federal law by terminating his employment because of his age, treating Plaintiff differently and less-favorably than similarly-situated younger employees, and replacing him with a younger employee.

50. Defendant's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages for which he is entitled to recovery.

## COUNT III

### (Race Discrimination – O.R.C § 4112)

52. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

53. Plaintiff is an African American male and was fully qualified for his position at all relevant times.

54. Defendant discriminated against Plaintiff by terminating him because of his race, treating him differently and less favorably than similarly-situated Caucasian employees, and subjecting him to unfounded disciplinary actions and a racially hostile work environment.

55. Defendant's actions were intentional, willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been injured and is entitled to recovery pursuant to Ohio law.

## COUNT IV

### (Race Discrimination – Title VII)

57. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

58. Plaintiff is an African American male and was fully qualified for his position at all relevant times.

59. Defendant discriminated against Plaintiff by terminating him because of his race, treating him differently and less favorably than similarly-situated Caucasian employees, and subjecting him to unfounded disciplinary actions and a racially hostile work environment.

60. Defendant's actions were intentional, willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

61. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been injured and is entitled to recovery pursuant to Title VII.

## COUNT V

### (Retaliation – O.R.C. § 4112)

62. Plaintiff realleges the forgoing paragraphs as if fully rewritten herein.

63. Plaintiff engaged in legally protected activity by complaining about the use of racially offensive language in the workplace including the N word.

64. Defendant retaliated against Plaintiff for his protected activity by subjecting him to unwarranted disciplinary action and terminating his employment in violation of Ohio law.

65. Defendant's actions were intentional, willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been injured and is entitled to recovery pursuant to Ohio law.

## COUNT VI

### (EFMLEA – FMLA Interference & Retaliation)

67. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

68. The EFMLEA is a part of the FFCRA. It requires a covered employer to provide expanded paid family and medical leave to an eligible employee who is "caring for his or her Son or Daughter whose School or Place of Care has been closed for a period of time, whether by order of a State or local official or authority or at the decision of the individual School or Place of Care, or the Child Care Provider of such Son or Daughter is unavailable, for reasons related to COVID-19." 29 C.F.R. § 826.20(a)(1)(v).

69. The FMLA's general prohibitions on interference with rights and discrimination, as well as the FMLA's enforcement provisions, apply with equal force to the EFLMEA. 29 C.F.R. § 826.151.

70. At all relevant times, Defendant was a covered employer under the EFMLEA, as defined by 29 C.F.R. § 826.40.

71. At all relevant times, Plaintiff was an eligible employee entitled to the protections of the EFMLEA. 29 C.F.R. § 826.30.

72. Plaintiff's requested use of leave—to care for his grandson while he was having difficulty finding childcare during the pandemic constitutes a "qualifying reason" for leave under the EFMLEA. 29 C.F.R. § 826.20(a).

73. Intermittent leave is possible under the EFMLEA through mutual agreement of the employer and the employee. 29 CFR § 826.50.

74. A request to take leave is protected activity under the FMLA and by extension the EFMLEA.

75. Defendant interfered with Plaintiff's rights to leave and retaliated against him, in violation of 29 C.F.R. § 826.151, by, including but not limited to, interfering with his right to take intermittent paid family and medical leave for no legitimate reason, issuing disciplinary

9

action when Plaintiff sought leave, and terminating his employment to avoid having to accommodate his requests for leave.

76. By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise his FMLA rights, in violation of 29 C.F.R. § 826.151(a) and 29 U.S.C. § 2615(a)(1).

77. Defendant's actions were willful and taken in bad faith; Defendant did not have reasonable grounds to believe its actions did not violate the FFCRA and its attendant regulations.

78. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to recovery.

## COUNT VII

### (EPSLA/FLSA Interference and Retaliation)

79. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

80. The EPSLA is a part of the FFCRA. It requires a covered employer to provide paid sick leave to an eligible employee who is "caring for his or her Son or Daughter whose School or Place of Care has been closed for a period of time, whether by order of a State or local official or authority or at the decision of the individual School or Place of Care, or the Child Care Provider of such Son or Daughter is unavailable, for reasons related to COVID-19." 29 C.F.R. § 826.20(a)(1)(v).

81. The enforcement provisions of the Fair Labor Standards Act (FLSA) apply to EPSLA, such that an employer who retaliates against an employee for invoking the statute would be found to have violated § 15(a)(3) of the FLSA and would be subject to its penalties, including but not limited to liquidated damages. 29 C.F.R. § 826.150.

82. Likewise, an employer who fails to provide paid sick leave under the EPSLA is considered to have failed to pay the minimum wage under the FLSA and is subject to its penalties, including but not limited to liquidated damages. 29 CFR § 826.150.

83. At all relevant times, Defendant was a covered employer, as defined by the EPSLA. 29 CFR § 826.40.

84. At all relevant times, Plaintiff was an eligible employee as defined by the EPSLA. 29 C.F.R. § 826.30.

85. Intermittent leave was possible under the EPSLA through mutual agreement of the employer and the employee. 29 CFR § 826.50.

86. Plaintiff's requested use of leave—to care for his grandson while he was having difficulty finding childcare during the pandemic constitutes a "qualifying reason" for leave under the EPSLA. 29 C.F.R. § 826.20(a)(1)(v).

87. A request to take leave is protected activity under the EPSLA.

88. Defendant interfered with Plaintiff's rights to leave and retaliated against him, in violation 29 C.F.R. § 826.150, by, including but not limited to, interfering with his right to take intermittent paid sick leave for no legitimate reason, issuing disciplinary action when Plaintiff sought leave, and terminating his employment to avoid having to accommodate his requests for leave.

89. By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise her EPSLA rights, in violation of 29 C.F.R. § 826.151(a) and 29 U.S.C. § 215(a)(3).

90. Defendant's actions were taken in bad faith, and Defendant did not have reasonable grounds to believe its actions did not violate the FFCRA and its attendant regulations.

11

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to recovery.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(a) The Defendant be enjoined from further unlawful conduct as described herein;

(b) The Plaintiff be reinstated to his employment effective September 22, 2020:

(c) That Plaintiff be awarded all lost earnings and benefits;

(d) That Plaintiff be awarded compensatory damages, including for emotional distress;

(e) That Plaintiff be awarded liquidated damages;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded reasonable attorney's fees and costs;

(h) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years;

(i) That Plaintiff be awarded prejudgment interest, and;

(j) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully Submitted,

*/s/ George M. Reul, Jr.*
George M. Reul, Jr. (0069992)
Trial Attorney for Plaintiff
Freking, Myers, & Reul, LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
Phone: (513) 721-1975
Fax: (513) 651-2570
*greul@fmr.law*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ George M. Reul, Jr.*